IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION


KRISTIN L. COLLINS                                                                               PLAINTIFF


v.                                        NO. 1:06CV00045 HDY


MICHAEL J. ASTRUE,                                                                          DEFENDANT
Commissioner of the Social
Security Administration


MEMORANDUM OPINION AND ORDER

The record reflects that in February of 2004, plaintiff Kristin L. Collins ("Collins") filed an application for supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). Her application was denied initially and upon reconsideration. She next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In March of 2006, the ALJ issued a ruling adverse to Collins. She appealed the ruling to the Appeals Council where the decision of the ALJ was affirmed. The decision of the ALJ therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In September of 2006, Collins commenced the proceeding at bar in which she challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012. The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion. See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings. The Commissioner made findings pursuant to the five step sequential evaluation process.[1] At steps one through three, the Commissioner found the following: Collins has not engaged in substantial gainful activity since the alleged onset date; she is severely impaired as a result of "minimal left leg shortness," see Transcript at 20; and her impairments are not listed in, nor medically equal to one listed in, the governing regulations. The Commissioner found that Collins retains sufficient residual functional capacity to perform medium unskilled work and thus found at step four that she can perform her past work as a cafeteria food service worker. Given the foregoing findings, the Commissioner concluded that Collins is not disabled within the meaning of the Act.

---

[1] The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

Are the Commissioner's findings supported by substantial evidence on the record as a whole? Collins thinks not and advances two reasons why they are not. She maintains that she has "impairments and/or a combination of impairments equal to [those] listed in 20 CFR 404.1501 ..." See Document 9 at 6.[2] She additionally maintains that the Commissioner failed to adequately consider Collins' "inability to be around people due to her anxiety." See Document 9 at 8.

At step two of the sequential evaluation process, the Commissioner is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "'more than a minimal effect on the claimant's ability to work.'" See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [quoting Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989)]. If the claimant's impairments are found to be severe, the Commissioner is obligated at step three to determine whether, when considered individually and collectively with other impairments, they meet or equal a listed impairment. See Sullivan v. Zebley, 493 U.S. 521 (1990); Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at steps two and three are medical determinations. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three).

---

[2] She specifically maintains that her impairments stem from a history of headaches; left knee pain; back pain; panic attacks; anxiety; stress; nervousness around people; crying spells; left leg shortness; "[g]rowth arrest of the lateral femoral condyle since the overall size is much smaller than would be expected, see Document 9 at 6; and side effects from medications.

Turning to the proceeding at bar, the Commissioner identified the impairments alleged by Collins at step two and determined that, with one exception, they are not severe. With regard to her physical impairments, the Commissioner found that Collins is severely impaired as a result of her "minimal left leg shortness." See Transcript at 20. The Commissioner failed to find, however, that Collins suffers from any additional severe physical impairments. The Commissioner specifically discounted the severity of Collins' headaches, left knee pain, and back pain because there is no medical evidence to support her allegations. With regard to Collins' mental impairments, the Commissioner found that there is "no medical evidence that [Collins] has a medically determinable mental impairment that despite compliance with treatment imposes more than minimal limitations for basic work activities of unskilled entry level work." See Transcript at 18. Although the Commissioner did find that the medical evidence establishes that Collins has "anxiety traits or a possible anxiety disorder," "[t]his medically determinable impairment is not severe when considered as [an] individual impairment ..." See Transcript at 19.[3] At step three, the Commissioner determined that Collins' minimal left leg shortness, when considered singly and in combination with other impairments, does not meet or equal a listed impairment.

---

[3] The Commissioner noted that if the record established that Collins has a severe impairment, her "non-severe impairments will be consider[ed] in combination with all medically determinable ... impairments in order to determine at [step three] ... whether a listing is met or equal[ed] ..." See Transcript at 19.

Substantial evidence on the record as a whole supports the Commissioner's findings with regard to Collins' physical impairments.[4] With regard to her mental impairments, specifically the severity of her anxiety, there is some question whether substantial evidence on the record as a whole supports the Commissioner's finding at step two that her anxiety is not severe. Admittedly, there is no objective medical evidence that Collins has a history of an anxiety disorder or other mental disorder.[5] In August of 2004, though, Dr. Donald Lamoureaux ("Lamoureaux") diagnosed Collins as suffering from "anxiety with panic attacks." See Transcript at 142. His notes reflect that he prescribed Xanax and Lexapro for her, although he admittedly only prescribed ninety tablets with no refills of the former and thirty tablets with one refill of the latter.

---

[4] Specifically, the record supports the Commissioner's findings at step two that save Collins' minimal left leg shortness, there is no medical evidence that her physical impairments are severe. She received very little treatment for her headaches and took no medication, save Tylenol, for the headaches. Although she did complain to Dr. Donald Lamoureaux about the headaches, his notes reflect that her headaches were of an unspecified origin and could not be given a medical confirmation. It appears that Collins never sought treatment for her knee and/or back pain. Dr. Ronald James Bates performed a consultative examination of Collins in May of 2004. See Transcript at 128-139. His notes reflect that her range of motion was within normal limits. When she visited Lamoureaux three months later, she did not complain of knee and/or back pain. At the request of the Commissioner, Dr. Alice Martinson ("Martinson") examined Collins in October of 2005. See Transcript at 174-177. Martinson found, inter alia, that Collins walked with a normal gait. Martinson opined that Collins' pain was likely caused by "the need to compensate in the spine for her limb length discrepancy." See Transcript at 175. Martinson opined that the addition of a small lift to her left shoe would likely minimize the pain. The record also supports the Commissioner's finding at step three that Collins' minimal left leg shortness, considered both singly and in combination with other impairments, does not meet or otherwise equal a listed impairment.

[5] The record reflects that Collins did report during one post-administrative hearing medical examination that she has a "long history of anxiety." See Transcript at 180. There is no objective medical evidence to support her assertion.

In October of 2004, Dr. George M. DeRoeck ("DeRoeck") performed a consultative examination of Collins. <u>See</u> Transcript at 148-155. He questioned whether she actually suffers from anxiety, specifically noting the following:

> … [Collins] indicates primarily an inability to maintain employment due to "recognition" of her having a nerve problem interfering with her ability to maintain employment in a social setting. She maintained her position that she is "unsure" that she could work more than a part time position, "if" she was around other people. However, her presentation in today's [examination] was not suggestive of overt anxiety/tension. Despite taking medication over the past month and a half, she identifies that it is helping minimally. She openly identifies believing that the medication will not in and of itself help.
>
> Despite description of a longstanding history of anxiety, she has only recently obtained any type of help, approximately one month and a half ago. …
>
> As such, the veracity of a number of her statements have come into question. …

<u>See</u> Transcript at 155.

DeRoeck's opinion is not entirely consistent with those offered by two other medical professionals. First, in November of 2004, Dr. Jerry Henderson examined Collins and found that she exhibited "anxiety traits," <u>see</u> Transcript at 165, and was "moderately limited" in her ability to "interact appropriately with the general public," <u>see</u> Transcript at 157.[6]

---

[6] He nevertheless opined that she is "able to perform work where interpersonal contact is incidental to work performed." <u>See</u> Transcript at 158.

Second, in the spring of 2006, after the conclusion of the administrative hearing but before the Appeals Council affirmed the decision of the ALJ, Collins was seen by Dr. Timothy Young ("Young"). <u>See</u> Transcript at 179-184. In March of 2006, and again in April of that year, he diagnosed her as suffering from anxiety and/or an anxiety disorder. <u>See</u> Transcript at 181, 183. His notes from his March of 2006 examination are additionally instructive for the following notation: "[Collins] hopefully can improve. As it stands, it would be very difficult for this [patient] to work on [a] long term basis." <u>See</u> Transcript at 181.

As the foregoing demonstrates, there is conflicting evidence as to the severity of Collins' anxiety. The Court is mindful that substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions. Given that standard, there is some question whether a reasonable mind would find the evidence adequate to support the Commissioner's finding that Collins' anxiety and/or possible anxiety disorder is not severe, that is, it does not have more than a <u>minimal</u> effect on her ability to work. The Court need not definitively answer that question, though, because the Commissioner could properly find at step three that Collins' impairments, singly and in combination, do not meet or equal a listed impairment; could properly find that she retains sufficient residual functional capacity to perform medium unskilled work; and could properly find at step four that she can perform her past work as a cafeteria food service worker.

At step three, the Commissioner was called upon to determine whether Collins' impairments meet or equal a listed impairment. In making that determination, the Commissioner considered Collins' severe impairment, i.e., her minimal left leg shortness, **and** her non-severe impairments, including her anxiety. The Commissioner found that Collins' impairments, both singly and in combination, do not meet or equal a listed impairment. Collins has not shown that the Commissioner's findings at step three are not supported by substantial evidence on the record as a whole, specifically, Collins has not shown that her impairments, singly and in combination, meet or equal a listed impairment.[7]

In moving to step four, the Commissioner was called upon to determine Collins' residual functional capacity and whether she can return to her past work.[8] In making that determination, the Commissioner consider, inter alia, Collins' anxiety. The Commissioner found as follows with regard to Collins' anxiety:

---

[7] In that regard, the Court notes that Collins bears the burden of showing that her impairments, both singly and in combination with her other impairments, meet or equal a listed impairment. See Brown v. Shalala, 15 F.3d 97 (8th Cir. 1994) (burden of proof shifts to Commissioner only at fifth and final step of the sequential evaluation process).

[8] "The ALJ must determine a claimant's [residual functional capacity or RFC] based on all of the relevant evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir.2000). 'The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence.' Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir.2004). An ALJ's determination of a claimant's RFC must find support in the medical evidence. Krogmeier, 294 F.3d at 1023." See Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004).

> Another inconsistency [undermining Collin's credibility] concerns [her] testimony that she had a longstanding anxiety condition and took medication for this condition in the past and went off her medication during her pregnancy ... Yet, there are no medical provider[s] identified for this prior history of treatment and no medical records of such treatment submitted. Indeed, she previously reported no such history of psychiatric treatment or any medication usage prior to August 2004 ... In fact, [she] reported that no one ever suggested psychiatric treatment and she denied even realizing that she had a nerve problem until a recent realization of this problem ... The absence of any medical treatment for any reason related to her disability claim since 1985, except for a single office visit in August 2004, six months after she filed this claim, creates the impression that she sought treatment and medical for her nerves in order to obtain medical evidence to support this claim, not to treat alleged symptoms. Further, this impression is reinforced with her failure to continue such treatment or medication usage for alleged nerves. ...

See Transcript at 24.

Substantial evidence on the record as a whole supports the Commissioner's findings at step four with regard to Collins' anxiety and her inability to work around other people. First, there is no objective medical evidence supporting her assertion that she has a history of an anxiety disorder or other mental disorder. It appears that the first notation by a medical professional of Collins' anxiety was not made until August of 2004, six months after she filed her claim for supplemental security income benefits.

Second, the record does not reflect a longstanding course of treatment for her anxiety. Although Lamoureaux did prescribe Xanax and Lexapro in August of 2004, he only prescribed ninety tablets with no refills of the former and thirty tablets with one refill of the latter.

Third, there is no indication that Collins has consistently followed a course of treatment for her anxiety. She testified during the administrative hearing that she stopped taking Xanax and Lexapro when she became pregnant. See Transcript at 198-199. It is understandable that she would stop taking the medication during her pregnancy, but it is not clear why she did not begin taking the medication again once her pregnancy concluded.[9] It appears that in the spring of 2006, Young prescribed medication to Collins for her anxiety. It is not clear, though, whether she continues to follow the regiment of treatment prescribed by him and whether the treatment has been beneficial in reducing or eliminating her anxiety.

Fourth, Young's opinion as to Collins' ability to return to work is supported by little medical evidence. The record appears to reflect that he examined her on three occasions: on March 24, 2006; again on April 5, 2006; and finally on April 26, 2006. It was following his initial examination of her that he opined that it would be very difficult for her to work on a long term basis. Not only is the medical evidence supporting his opinion scant, his notes from his third examination of her–a mere one month later–contain the following notation: "[one] month follow up; [patient] is improved, still anxiety; but can tell a difference." See Transcript at 183. The Court is not convinced that his findings establish that she is unable to return to work on account of, inter alia, her anxiety.

---

[9] She testified during the administrative hearing that she needs to "get back on [the medication]." See Transcript at 199.

Fifth, although Collins' complete work history is not a part of the record, it appears that she has been able to work on and off despite the existence of her alleged long history of anxiety. See Transcript at 97. Her work history is admittedly not extensive, but it is some evidence of an ability to return to her past relevant work.

Sixth, Collins' range of normal daily activities belie the severity of anxiety alleged by her. The Commissioner could properly find that Collins "discussion of activities of daily living is not consistent with a finding of inability to sustain most work activity." See Transcript at 22.

Given the foregoing, the Court finds that substantial evidence on the record as a whole supports the Commissioner's findings. Specifically, the Commissioner did not err in identifying Collins' impairments. Although there is some question whether a reasonable mind would find the evidence adequate to support the Commissioner's finding that Collins' anxiety and/or possible anxiety disorder is not severe, the Court need not definitively answer that question because the Commissioner could properly find the following: (1) that Collins' impairments, singly and in combination, do not meet or equal a listed impairment; (2) that she retains sufficient residual functional capacity to perform medium unskilled work; and (3) that she can perform her past work as a cafeteria food service worker. Consequently, Collins' complaint is dismissed, and all requested relief is denied. Judgment will be entered for the Commissioner.

IT IS SO ORDERED this __7___ day of June, 2007.

_____
UNITED STATES MAGISTRATE JUDGE